**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Duran Murrieta, | No. CV-19-04865-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Sergio Duran Murrieta's application for disability insurance benefits by the Social Security Administration ("SSA") under the Social Security Act.  The Court now addresses Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 20, "Def. Br."), and Plaintiff's Reply Brief (Doc. 23, "Reply").  Having reviewed the briefs and the Administrative Record (Doc. 11, "R."), the Court reverses the Administrative Law Judge's ("ALJ") decision (R. at 34-49) and remands for further proceedings.

## I.      BACKGROUND

Plaintiff filed an application for disability and Social Security Disability Insurance benefits ("SSDI") on October 27, 2014, and an application for Supplemental Security Insurance benefits ("SSI") on November 6, 2014, both for a period of disability beginning on October 22, 2013.  (R. at 34.)  His claims were denied initially on May 5, 2015, and upon reconsideration on November 5, 2015.  (*Id.*)  Plaintiff appeared before the ALJ for

1    hearings regarding his claims on November 2, 2017, and August 14, 2018.   (R. at 62-78,

2    117-19.)

3           On October 2, 2018, the ALJ partially granted and partially denied Plaintiff's

4    claims.  Notably, the ALJ made disability determinations for three different time periods:

5    (1) the period between Plaintiff's alleged disability onset date (October 22, 2013) and

6    December 15, 2014 ("Period One"); (2) the period between December 15, 2014 and

7    January 25, 2017 ("Period Two"); and (3) the period after January 25, 2017 ("Period

8    Three").  As part of this analysis, the ALJ considered the following severe impairments:

9    lumbar degenerative disc diseases (Period One); hypertension (Period Two); status post

10   left shoulder arthroscopy, sciatica, spondylosis, and cervical degenerative disc disease

11   (Period Three).  (R. at 37.)  The ALJ also calculated Plaintiff's residual functional capacity

12   ("RFC") during each Period, as follows:

13          [P]rior to December 15, 2014, . . . [Plaintiff] had the [RFC] to perform
            medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except
14          [Plaintiff] could lift 50 pounds occasionally and 25 pounds frequently.
            [Plaintiff] could stand and or walk six to eight hours in an eight-hour
15          workday and sit six to eight hours in an eight-hour workday.  [Plaintiff] could
            occasionally climb ladders, ropes and scaffolds.  [Plaintiff] could frequently
16          perform left overhead reaching.

17          . . .

18          [B]eginning December 15, 2014, but prior to January 25, 2017, [Plaintiff]
            had the [RFC] to perform light work as defined in 20 CFR 404.1567(c) and
19          416.967(c) except [Plaintiff] could lift 20 pounds occasionally and 10 pounds
            frequently.  [Plaintiff] could stand and or walk four hours in an eight-hour
20          workday and sit six to eight hours in an eight-hour workday.  [Plaintiff] could
            occasionally climb ladders, ropes and scaffolds.  [Plaintiff] could frequently
21          perform left overhead reaching.

22          . . .

23          [B]eginning on January 25, 2017, [Plaintiff] has the [RFC] to perform
            sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except
24          [Plaintiff] can lift and/or carry 10 pounds occasionally and 10 pounds
            frequently.  [Plaintiff] can stand and/or walk two hours in an eight-hour
25          workday and sit six to eight hours in an eight-hour workday.  [Plaintiff] can
            occasionally climb ladders, ropes and scaffolds.  [Plaintiff] can frequently
26          perform left overhead reaching.

27   (R. at 40-42, 44.)

28

Based on these RFC calculations, the ALJ concluded that Plaintiff was not disabled during Period One (because he could perform past relevant work) or Period Two (because, although his RFC became more restrictive, he was still able to perform the jobs of small parts assembler and electronics assembler, both of which exist in significant numbers in the national economy) but was disabled during Period Three. (R. at 40-48.) The ALJ also noted that Plaintiff's "date last insured" for SSDI benefits was December 31, 2016, which was before the established onset date of January 25, 2017. (R. at 37, 48.) As a result, Plaintiff was granted SSI benefits but not SSDI benefits. (R. at 47-48.)

On May 30, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (R. at 1-3.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.    20 C.F.R.

§ 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

## III.    ANAYSIS

Plaintiff raises three arguments for the Court's consideration.  First, Plaintiff argues that the ALJ erred by rejecting the medical opinion of Dr. Angel Gomez.  (Pl. Br. at 17-19.)  Second, Plaintiff argues that the ALJ erred by rejecting the medical opinion of Dr. Jeffrey Hansen.  (Pl. Br. at 19–22.)  Third, Plaintiff argues that the ALJ erred by rejecting his symptom testimony.  (Pl. Br. at 22–26.)  Plaintiff asks the Court to apply the "credit-as-true" rule and remand for a calculation of benefits.  (Pl. Br. at 26–27.)

### A.    Plaintiff has not established that the ALJ erred when discounting the opinion of Dr. Gomez

Under the law and regulations in effect at the time of the hearing in this case, there was a hierarchy among the sources of medical opinions.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*  An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'"  *Carmickle v. Comm'r of Soc. Sec.*, 533

F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, one source of medical opinions was Dr. Gomez, a consultative examiner. Following an examination on December 11, 2012, Dr. Gomez opined that Plaintiff could "occasionally" lift or carry 10 pounds, could "frequently" lift or carry 10 pounds, could stand or walk for only 1 hour in an 8-hour work day, could sit for 6-8 hours in an 8-hour work day, could "occasionally" climb ladders, ropes, and scaffolds, could "occasionally" perform reaching, and could perform handling and fingering without limitation. (R. at 689-91.) Meanwhile, following a different examination on July 29, 2013, Dr. Gomez opined that Plaintiff could "occasionally" lift or carry 20 pounds, could "frequently" lift or carry 10 pounds, could stand or walk for 3 hours in an 8-hour work day, could sit for 6-8 hours in an 8-hour work day, could "occasionally" climb ladders, ropes, and scaffolds, could "frequently" perform reaching, and could "frequently" perform handling and fingering. (R. at 696-99.)  The ALJ accepted most of the opined-to limitations from the second examination for purposes of calculating Plaintiff's RFC during Period Two—like Dr. Gomez, the ALJ concluded that Plaintiff could "occasionally" lift or carry 20 pounds, could "frequently" lift or carry 10 pounds, could sit for 6-8 hours in an 8-hour work day, could occasionally climb ladders, ropes, and scaffolds, and could "frequently" perform reaching. (R. at 42.) However, whereas Dr. Gomez believed Plaintiff could stand or walk for 3 hours in an 8-hour work day, the ALJ concluded that Plaintiff could stand or walk for 4 hours during an 8-hour work day; and whereas Dr. Gomez believed Plaintiff could "frequently" perform handling and fingering, the ALJ did not include any limitations in this area. (*Compare* R. at 42 *with* R. at 697.)

The ALJ stated that she was affording "little weight" or "minimal weight" to Dr. Gomez's opinion for purposes of Period One and "partial weight" to Dr. Gomez's opinion for purposes of Period Two.  (R. at 42, 44.)  Unfortunately, the ALJ's opinion is not a model of clarity concerning why she decided to discount Dr. Gomez's opinions in this fashion.  In one portion of the opinion, the ALJ stated that she was rejecting Dr. Gomez's first opinion as it relates to Period One solely because "[t]he examination did not provide insight into the claimant's conditions during the period of review."  (R. at 42.)  In another portion of the opinion, the ALJ provided a paragraph of explanation concerning why she was rejecting Dr. Gomez's second opinion as it relates to Period Two.  (R. at 44.)  With the caveat that it is difficult to discern which sentences within this paragraph constitute independent reasons for rejecting Dr. Gomez's second opinion (as opposed to a discussion of the evidence supporting those reasons), the Court construes this paragraph as providing the following four reasons for discounting Dr. Gomez's second opinion: (1) Plaintiff "treated his back pain conservatively during the relevant period"; (2) the "objective findings" and "physical exams" related to Plaintiff's back resulted in "fairly minimal" or "normal" findings; (3) Plaintiff also "experienced improvement in his shoulder pain, post-surgery"; and (4) "Dr. Gomez's opinion is based on a 'snapshot' examination and he was not privy to all of the medical records on file." (R. at 44.)

Unfortunately, Plaintiff fails to address some of these reasons in his brief.  Plaintiff suggests that the ALJ only provided two reasons for rejecting Dr. Gomez's opinion—first, the pursuit of a conservative course of treatment with respect to back pain, and second, conflicts with Plaintiff's activities of daily living and subjective complaints—and then argues that, because those two reasons are flawed and "[n]o other reasons were given to reject Dr. Gomez's assessment," it follows that the ALJ committed error.  (Pl. Br. at 17-19.)  The problem with this approach is that, although the ALJ's analysis is admittedly opaque, it doesn't appear that the ALJ's analysis was so limited.  As noted, the ALJ specifically pointed to Plaintiff's "improvement in his shoulder pain, post-surgery" as one reason to discount Mr. Gomez's second opinion.  Because Plaintiff doesn't acknowledge

(let alone attempt to establish the insufficiency of) this reason in his brief, it is difficult to see how the Court could find reversible error on this record. *Lewis*, 236 F.3d at 517 n.13. *Cf. Reynolds v. Colvin*, 2013 WL 6478469, *8 (C.D. Cal. 2013) ("Plaintiff fails to discuss, or even acknowledge, the ALJ's other reasons for finding her not credible. Therefore, plaintiff has waived any challenge to the remaining aspects of the ALJ's credibility finding.").

> **B.**     **Plaintiff has not established that the ALJ erred when discounting the opinion of Dr. Hansen**

During the second hearing, the ALJ heard testimony from Dr. Hansen, a board-certified orthopedic surgeon, who was testifying as an expert at the ALJ's behest. (R. at 97-112.) Having summarized the results of MRI exams and other medical imaging concerning Plaintiff's spine and shoulder (*id.* at 100-04, 109-112), Dr. Hansen concluded that Plaintiff could lift and carry 5 pounds frequently and 10 pounds occasionally, that Plaintiff could sit for 6 hours and stand for 4 hours in an 8-hour workday, and that use of a cane by Plaintiff would be "medically necessary." (*Id.* at 105-07.) Additionally, Dr. Hansen opined that, due to Plaintiff's shoulder problems, Plaintiff could never reach overhead with his left shoulder, could only occasionally engage in other forms of reaching with his left shoulder, and could occasionally reach overhead with his right shoulder. (*Id.* at 107-08.) Finally, Dr. Hansen opined that Plaintiff would be subject to limitations with respect to ramps (occasional), stairs (occasional), ladders (never), scaffolds (never), ropes (never), balancing (frequent), stooping (occasional), kneeling (occasional), crouching (occasional), and crawling (never). (*Id.* at 108-09.) Dr. Hansen clarified that all these restrictions would be effective from October 2013 onward, except for the cane restriction, which came into effect in January 2016. (*Id.* at 109.)

Although the ALJ chose to assign "great weight" to some of Dr. Hansen's opinions—specifically, the opinions that Plaintiff could stand or walk for 4 hours in an 8-hour workday and could perform handling and fingering without restriction—the ALJ assigned "minimal weight" to Dr. Hansen's opinion that Plaintiff "is unable to reach overhead at all or perform reaching with the left upper extremity on an occasional basis

only." (R. at 45.) Unfortunately, as was the case with Dr. Gomez, the ALJ's opinion is not a model of clarity concerning why she decided to discount Dr. Hansen's opinion in this fashion. The opinion can be interpreted as providing the following reasons: (1) Dr. Hansen "testified [Plaintiff] had a failed shoulder surgery, but this is inconsistent with treatment records"; (2) although Plaintiff "reported severe back pain," he "consistently reported pain medication improved his pain" and "medication brought his pain to reasonable levels"; and (3) "the record does not establish the use of a cane as medically necessary on a regular basis" because although Plaintiff "testified the examining physician for the state agency told him to use a cane . . . [t]his was not corroborated by the consultative examiner reports" and because Plaintiff "denied gait abnormalities during treatment." (R. at 45-46.)

In his brief, Plaintiff doesn't address all of these reasons. Plaintiff interprets the ALJ's opinion as providing the following reasons for rejecting Dr. Hansen's opinion—first, Dr. Hansen's alleged mischaracterization of the shoulder surgery as "failed"; second, the alleged efficacy of pain medication in treating Plaintiff's back pain; and third, the alleged late timing of the first report of neck pain—and then argues that, because those reasons are flawed, it follows that the ALJ committed error. (Pl. Br. at 19-21.) But as noted, the ALJ also included specific criticisms concerning Dr. Hansen's opinion on the medical necessity of a cane, and Plaintiff does not address those criticisms in his brief.

**C.   The ALJ erred in rejecting Plaintiff's symptom testimony**

During the hearing, Plaintiff testified that he "constantly" suffers from back, leg, and shoulder pain, that he is only able to sit for 5-10 minutes at a time, that he is essentially unable to lift or carry any weight, and that his average day generally consists of sitting or lying down and doing crossword puzzles. (R. at 72-73.) Plaintiff also testified that his average pain level is a 7 or 8 and that it has remained constant since 2013. (R. at 74-75.)

The ALJ largely rejected this testimony, concluding that during Periods One and Two, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

- 8 -

medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 42, 44.) The ALJ also identified the following categories of evidence that "illustrate greater functional abilities than alleged" by Plaintiff: (1) the "objective medical evidence"; (2) "the effectiveness of treatment"; and (3) Plaintiff's activities of daily living ("ADLs"). (*Id.*) However, the ALJ did not provide any reasoning or support for these assertions—the ALJ did not, for example, identify a particular ADL that contradicted Plaintiff's testimony.

As Plaintiff correctly argues (Pl. Br. at 22-26), this was error. Because the ALJ acknowledged that Plaintiff had presented objective medical evidence that could reasonably be expected to produce the pain or symptoms alleged, and because Plaintiff was not accused of malingering, the ALJ could only discount Plaintiff's symptom testimony for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Additionally, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Here, such reasoning was wholly lacking. Although the ALJ identified reasons (*i.e.,* conflicts with medical evidence and ADLs) that might, as a theoretical matter, justify the rejection of a claimant's symptom testimony in a different case, the ALJ failed to explain with any specificity why those reasons were applicable here.

### D.    Remedy

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand for payment of benefits rather than further proceedings. (Pl. Br. at 26.)

In general, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367

F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).   The alternative, a remand for benefits, is appropriate only in "rare circumstances." *Treichler*, 775 F.3d at 1099-1102.  These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or claimant testimony.  *Id.* at 1100-01.  Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful.  *Id.* at 1101.  Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved.  *Id*.  Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'"  *Id.* (citations omitted).  Additionally, "even when those rare circumstances are present, [t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the Court's] discretion."  *Id.* at 1101-02 (quotations omitted).

Here, only the first element is present.  The ALJ failed to provide sufficient reasons for rejecting Plaintiff's symptom testimony.  Further proceedings would be useful to enable the ALJ to outline her reasoning on that issue with more specificity.

The Court also notes that, even it if had ruled in Plaintiff's favor with respect to the ALJ's alleged errors concerning Drs. Gomez and Hansen, further proceedings would remain useful.  The first and second opinions of Dr. Gomez contain some unexplained discrepancies—Dr. Gomez opined that Plaintiff's ability to stand and walk got better between examinations (it improved from 1 hour per workday to 3 hours per workday), as did Plaintiff's ability to perform reaching (it improved from "occasionally" to "frequently"),  yet Plaintiff's ability to perform handling and fingering degraded during the same period (it went from "No limitations" to "frequently").  Because the presence or absence of handling- and fingering-related restrictions was critical to the disability determination during Period Two (R. at 85-86), and because Dr. Hansen seemed to opine

that Plaintiff had no handling- and fingering-related restrictions (R. at 45), the Court believes that further administrative proceedings would be useful to explore the reasons for this change (and cannot say, in the absence of such development, that it is convinced of Plaintiff's disability). The Court also notes that, although Plaintiff challenges the ALJ's rejection of the portion of Dr. Hansen's opinion concerning Plaintiff's ability to engage in reaching, Dr. Gomez provided much less restrictive opinions on that topic—he opined that Plaintiff could "frequently" perform reaching activities. (R. at 697.) Again, further development would be useful in light of this discrepancy. And finally, because Plaintiff's description of his symptoms and limitations differed from (and was seemingly more extreme than) the opined-to limitations of Dr. Gomez and Dr. Hansen, this discrepancy provides yet another reason why a remand for calculation of benefits would be inappropriate here.

**IT IS THEREFORE ORDERED** reversing the decision of the ALJ and remanding for further administrative proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 24th day of November, 2020.

Dominic W. Lanza
United States District Judge